In the Matter of the ESTATE of Fred C. STACKMAN, deceased.

No. 40544.

Supreme Court of Oklahoma.

Nov. 19, 1963.

Rehearing Denied Jan. 7, 1964.

Carl Pinkerton, James C. Pinkerton, Tulsa, for plaintiff in error, Mrs. Evelyn P. Stackman.

Gable, Gotwals & Hays, Eugene A. Hoefling, Tulsa, for defendant in error, Fourth National Bank & Trust Co. of Wichita, Kansas.

BERRY, Justice.

Fred C. Stackman died testate May 1, 1961, in Wichita, Kansas, leaving as survivors his widow, Evelyn P. Stackman, and a certain collateral kin. Under a will dated May 27, 1960, there was testamentary disposition of a gross estate of approximately $242,000.00 of which about $65,000.00 had situs in Oklahoma. This will, admitted to probate in Sedgewick County, Kansas, July 13, 1961, as a domiciliary will, devised and bequeathed approximately fifty percent of the estate to the widow and the remainder to testator's collateral kin. The will was uncontested by reason of a family settlement and compromise agreement between the widow and the other heirs. The Fourth National Bank & Trust Company of Wichita, Kansas was named administrator with will annexed. The administrator complied with statutory requirement of appointment of a resident agent. No application was made with the Kansas probate court for a widow's allowance out of the estate.

On January 16, 1962, the will was admitted to probate in Tulsa County without contest, as a foreign will. On February 1, 1962, the widow applied to the county court for a monthly widow's allowance in the sum of $1100.00, commencing upon the date of testator's death, and continuing during administration of the estate. After hearing thereon, the county court, on October 4, 1962, entered an order allowing the widow $560.00 monthly, beginning August 15, 1962, and continuing until July 15, 1963. This order also authorized the widow to apply for continuation of such allowance upon expiration of twelve months after date of the order.

Both the widow and the Fourth National Bank & Trust Co., hereinafter designated as the "Bank", appealed to the district court from the order above mentioned. The widow appealed upon the grounds the allowance should have commenced at the date of testator's death, and also because of the alleged insufficiency of the allowance. The Bank appealed upon the grounds a widow's allowance was not authorized to the family of a nonresident decedent; and, even assuming same to be authorized, the amount of the allowance was excessive.

The matter was heard de novo by the district court and taken under advisement. Thereafter the trial court entered judgment adopting the findings and order of the county court granting the application and fixing the widow's allowance. Both parties filed motions for new trial which were overruled, and both thereupon gave notice of intention to appeal upon the original record.

The present proceeding presents the appeal and cross-appeal of the parties. However, since both causes were docketed in this Court under the same filing, we shall consider the issues presented by the appealing parties separately.

Three propositions are urged by the Bank as grounds for reversal of the judgment, although it is asserted that a single

issue is determinative of the appeal. This assertion is based upon the contention that our statutes, 58 O.S.1961 § 314, applies only to the families of resident decedents. The argument is that the statutes providing for homestead and family allowance, 58 O.S. 1961 §§ 311–318 inc., must be construed together as delineating the general plan providing for the surviving widow and family of the decedent.

█ Acknowledging the lack of settled case law from the court, the Bank relies upon text authority and decisions from foreign jurisdictions to support the conclusion that the county court lacked authority to grant the widow's allowance out of property subject to the court's jurisdiction by reason of the ancillary administration under a foreign will. The issue as urged by the Bank excludes consideration of the matter of the widow's residence. The fact of her residence as being within jurisdiction of the Oklahoma probate court is uncontroverted. Neither is there any question before us relative to the place of deceased's residence. Neither rules of comity nor requirements of full faith and credit invoke consideration herein, since power to grant a widow's allowance is purely statutory; and, the statutes of decedent's domicile cannot have extraterritorial operation to enable a widow to claim an allowance under the statutes of decedent's domicile, but discharged out of property in another state. The controlling question herein to be determined simply is whether the probate court of Tulsa County had authority to grant the widow's allowance to a resident widow out of property under the court's jurisdiction by virtue of an ancillary proceeding under a foreign will. The power to grant a widow's allowance is purely statutory, and such authority is extended under 58 O.S.1961 § 314, which provides:

"If the amount set apart as aforesaid be less than that allowed, and insufficient for the support of the surviving spouse and children, or either, or, if there be no such personal property to be set apart, and if there be other estate of the decedent, the court may in its discretion make such reasonable allowance out of the estate as shall be necessary for the maintenance of the family, according to their circumstances during the progress of the settlement of the estate, which, in case of an insolvent estate, must not be longer than one year after granting letters testamentary, or of administration."

This statute has been construed heretofore. In In Re Foreman's Estate, 59 Okl. 1, 157 P. 279, p. 280, we said:

" * * * The widow's allowance is a right which, in proper cases, it is mandatory upon the court to recognize (In re Pugsley's Estate, 27 Utah, 489, 76 Pac. 560), and the allowance is to be made even though the widow have property of her own ample to support her, and irrespective of a partial distribution * * *." Citing authorities.

More recently, in In Re Crane's Estate, 201 Okl. 354, 206 P.2d 726, 9 A.L.R.2d 524, we recognized that the decisions of the California court construing a statute very similar to our Sec. 314, supra, were to be considered persuasive.

█ In view of that declaration we adopt the language and reasoning of that court as expressed in In Re Bump's Estate, 152 Cal. 274, 92 P. 643, p. 644:

" * * * The right of a widow, who was a member of the family of the deceased and entitled to his support, at the time of his death, to have such allowance from the estate as may be reasonably necessary for her support during the settlement of the estate, is thus fixed by statute. It is not within the power of the husband by any provision of his will to deprive her of this right, or to in any wise limit the power of the court, in the exercise of its proper discretion, to fix the amount to be allowed. * * *"

Unquestionably the power to grant a widow's allowance was vested in the probate court under the statute, supra.

The remaining question is whether the court acted properly in ordering such allowance paid out of property under its jurisdiction by reason of the pending ancillary administration. The Bank's position, urging the probate court's lack of authority to enter the order appealed from, is predicated upon the proposition that our statute permitting the widow's allowance applies only to the widow (or family) of a resident decedent. The argument in support of such position is two fold: First, the statutes providing for family and widow's allowance are an integral part of the homestead and exemption statutes of the probate code, and intended to apply only to those entitled to a homestead exemption in this State; Second, an allowance made by an Oklahoma probate court to the widow (family) of a nonresident decedent, must be based upon the law of decedent's domicile and authorized as a matter of comity.

In support of the first phase of the argument, the Bank cites and relies upon general text law stated in 21 Am.Jur., "Executors and Administrators", Secs. 316 and 866, and upon early decisions from other courts, discussed hereafter. We note, however, that Sec. 319 of the cited text points out the lack of unanimity in the decisions of the various courts as respects the right of a nonresident widow to an allowance out of the estate of one domiciled within the state at the time of death. The following cases are relied upon as supporting the Bank's argument that family allowance statutes are intended only to benefit survivors of resident decedents.

In Re James' Estate, 38 S.D. 107, 160 N. W. 525. From the opinion it appears that the section of the probate code was amended so that the homestead and property classified as absolutely exempt were only available to a surviving spouse in case a homestead had been or was entitled to be selected. The family allowance was said not to be an interest in property but a preferred claim against the estate. The allowance had to be made only from exempt property, as defined by statute. And, by another section of the probate code it is provided that only property in the category of absolute exemptions, as opposed to that classified as specific alternative exemptions, would not be available to nonresidents. The probate code explicitly imposed a residence requirement, since without residence it was said that there could be neither homestead nor exempt property; and the exemptions were held to apply only to a resident head of a family.

In Smith v. Howard, 86 Me. 203, 29 A. 1008, the Maine court held that a provision for widow's allowance was a statute of succession and, absent a clear showing of residence, the law of decedent's domicile controlled.

In Graham et ux v. Stull, 92 Tenn. 673, 22 S.W. 738, 21 L.R.A. 241 that court stated the statute providing for widow's allowance was a statute of exemption. It was acknowledged that the statutes of various states differed, and were not intended to apply to citizens of other states; that state laws have no extraterritorial force, and are not designed or intended to extend their benefits to nonresidents. The Tennessee court did recognize the rule to be otherwise in Georgia and New York.

In Jaeglin v. Moakley (Mo.), 236 Mo. App. 254, 151 S.W.2d 524, it was held that nonresident California minors, whose rights to family allowance were the same as a widow, were not entitled to a family allowance under an ancillary proceeding in Missouri. The court recognized the general text rules heretofore noted. The basis of the decision was that if a widow be granted an allowance in any state other than that of the husband's domicile then she could claim an exemption in every state where the decedent held property. This would effect an exemption from the claims of creditors, and thus multiply what was intended as a temporary benefit and thereby work a wrong upon the creditors.

In 26 A.L.R. 132, appears an annotation which reflects the lack of harmony in the decisions of courts which have considered the problem. Therein it appears that the states of Georgia, Louisiana, Minnesota, Ohio and Washington adhere to the view that claim to an allowance out of the estate of a decedent domiciled within the state is not barred by the claimant's nonresidence at the time of decedent's death. In a number of earlier cases the Pennsylvania court held a nonresident widow was not entitled to benefits of the statute authorizing a widow's allowance. However, other cases from that court have relaxed such rule to permit granting an allowance when the widow's nonresidence results from fault of the husband. See Reed's Estate, 21 Pa. Dist. & Co. R. 906.

In 13 A.L.R.2d 973, appears an annotation dealing with enforceability of a grant of family allowance in the state of decedent's domicile against the decedent's realty, or proceeds thereof, in another state. It is pointed out that statutes of decedent's domicile providing for family allowances out of decedent's property cannot have extraterritorial operation so as to enable the widow, or children, to claim an allowance under the statutes of decedent's domicile out of real property in another state.

An annotation in 34 A.L.R.2d 1056 is concerned with the effect of extrajudicial separation on a surviving spouse's right to widow's allowance. The general proposition is asserted that allowance out of decedent's estate is not barred merely because the parties were living separate and apart at the time of decedent's death. This view has been accepted by our court in In Re Martin's Estate, 169 Okl. 55, 35 P.2d 968.

In In Re Foreman's Estate, 16 Cal.App. 2d 96, 60 P.2d 310, the California court had for consideration an analogous situation under Sec. 680 of that State's probate code, which provision is similar to our own statute. In this case the decedent, domiciled in the State of New York, died leaving a valuable estate in California. Decedent and wife were undivorced, but lived apart

under an agreement whereby the wife received a stipulated monthly allowance. Following admission of the will to probate in New York a compromise was agreed to and the widow dismissed her contest of the New York probate. Thereafter, the will was admitted to probate by the California court in an ancillary proceedings. The wife then made application for widow's allowance and an order was entered granting her application. One claiming to be a creditor moved to set aside such order and then appealed from denial of the motion. The contention was that since the parties were domiciled in New York and the statutes of that state did not authorize granting such an allowance, the California court was precluded from so doing in an ancillary proceedings. In affirming the order granting widow's allowance, that court stated that Sec. 680 of the probate code permitted granting allowance to a widow living apart, since the allowance is made for maintenance of the family during settlement of the estate. There was no evidence the widow was resident of New York and in absence of pleading and proof, it was presumed the New York statute was the same as the California statute. The decision pointed out the conflict in the authorities, but declared the widow was entitled to the allowance without regard to whether she was a citizen of New York at the time of her husband's death. The reason supporting the rule was quoted from 2 Bancroft's Probate Practice, 3739:

"Since the statute does not limit family allowance to estates of residents, no such limitation can be judicially imposed. A state within whose borders personal assets of decedent are found clearly has the power to grant an allowance to the widow or orphan out of these assets irrespective of the domicile of the husband or father at the time of his death. Although it is the general rule that the law of a decedent's domicile controls as to the distribution of personalty, such law must yield where rights of orphans with respect to their statutory allow-

ances are concerned and the orphans are resident at the situs of the property. Orphans' allowance is not an interest sought in the property, but is a preferred claim against the estate and to be protected on grounds of public policy in like manner as the state of actual situs of personalty protects local creditors."

More recent application of the rule announced in this case may be observed in In Re Coon's Estate, 107 Cal.App.2d 531, 237 P.2d 291.

The case of In Re Pugh's Estate, 22 Wash.2d 83, 154 P.2d 308, involved the propriety of granting a widow's allowance to a nonresident widow, under a statute quite similar to Sec. 314 of our own probate code. That court, citing the earlier case of In Re Johnson's Estate, 114 Wash. 61, 194 P. 834, declared that the domicile of the widow is immaterial, since the statute (Rem.Rev.Stat., Sec. 1426) made no exception as to residence or nonresidence, and it was immaterial whether a nonresident had home or homestead in another state, since entitled to what the laws of Washington gave the spouse. And see further In Re Gallagher's Estate, 35 Wash. 2d 512, 213 P.2d 621, wherein it is held that under a common-law marriage valid in state where contracted and which existed until husband died in Washington, it was proper to set aside the assets of decedent's estate in lieu of homestead.

■ The foregoing serves to point up the diversity of views expressed by courts of other jurisdictions upon this question. The problem necessarily must be determined solely in the light of the particular statute involved. We are impressed by the construction placed upon their own statute by the California court, particularly since our own statute is similar to that of California. No language contained in our own statute, supra, purports to limit the granting of family allowances to estates of residents. The decedent left property having situs in this State. The laws of the State of Kansas could not have extraterritorial

effect as respects the rights of a resident widow of Oklahoma, the situs of the property involved. The grant of a widow's allowance is authorized by our statute, and the order appealed from was properly entered.

■ The Bank further contends that if the Oklahoma probate court makes an allowance to the family of a nonresident decedent, such allowance is required to be based upon the law of decedent's domicile and authorized as a matter of comity. As noted earlier, rules of comity or due process do not require that the statute of the domiciliary state be given effect in this jurisdiction. A state has the power to provide for the allowance of such claims for the benefit and protection of one of its own citizens, and the order granting this allowance can be enforced out of property having situs in this jurisdiction. See generally 51 A.L.R.2d 1026, "Administration—Nonresident—Allowance"; 13 A.L.R.2d 974, et seq.

The argument urged by the Bank in respect to the second proposition is without substantial merit under either hypothesis.

■ Both parties urge reversible error arising out of the claimed abuse of discretion in the order fixing the amount of the allowance granted the widow. In so far as respects the arguments concerning the amount of the monthly allowance ($560.-00), we are bound by the settled rule, reannounced in Barry v. Phillips, Adm'x, etc., (Okl.), 329 P.2d 1046, wherein Syllabus 1 states:

"Where the county court has entered an order for a widow's allowance, which order on appeal to the district court is affirmed, and the record discloses the estate of the deceased is solvent, the question of the reasonableness and necessity of the allowance rests in the sound, judicial discretion of the trial court, and upon appeal, will not be set aside unless the order is not supported by the clear weight of the evidence."

We have reviewed the evidence adduced by the parties in support of their respective positions, upon which evidence the trial court based the finding as to a reasonable monthly allowance. The matters therein disclosed impel the conclusion that the trial court's judgment is not against the clear weight of the evidence. Howard et al, Exrs. v. Crane, 201 Okl. 354, 206 P. 2d 726, 9 A.L.R.2d 524.

Two other propositions, urged by the widow as requiring reversal of the judgment, are based upon error alleged to inhere in the date the judgment made the allowance effective, and also in that portion of the order terminating the allowance after one year, subject to application for continuation. For convenience, these contentions may be disposed of together.

■ Error is urged in that prior decisions have approved allowance to the widow beginning upon decedent's death. Crane v. Howard, supra; In Re Cully's Estate (Okl.), 276 P.2d 250; In Re Finston's Estate (Okl.), 288 P.2d 383. And, it is asserted that where the estate is solvent and with practically no indebtedness, the trial court had neither authority nor discretion to withhold the allowance for the fifteen months' period following decedent's death.

The record reflects the lapse of two months' time between decedent's death and the date the will was offered for probate in Kansas. More than eight months passed before the will was admitted to probate in Tulsa County. However, more than ten months elapsed between the date of decedent's death and filing of the application for widow's allowance. The estate is solvent and above average value, and the amount of the allowance will not affect such creditors. The evidence also disclosed the widow received some property of value by virtue of joint tenancy ownership. This Court is not required to speculate as to reasons for delay in making application for the widow's allowance. The question simply is whether the trial court abused its discretion in fixing the effective

date of the allowance some fifteen months following decedent's death. The language of the statute, supra, vests the trial court with discretion to make a reasonable allowance out of the estate for family support. Considering the judicial discretion to be exercised in such cases, we said in In Re Crane's Estate, 201 Okl. 354, 206 P.2d 726 @ 729, 9 A.L.R.2d 524:

"* * * Where a matter rests in the discretion of the trial court its action will not be disturbed unless the discretion is abused. In re Guardianship of Chambers, 46 Okl. 139, 148 P. 148. Abuse of judicial discretion is a discretion exercised to an end or purpose not justified by, and clearly against, reason and evidence. State et al v. State ex rel Shull, State Bank Com'r., 142 Okl. 293, 286 P. 891. * * *"

The matter of the widow's allowance presented a matter requiring exercise of the judicial discretion. Under this record the trial court's order cannot be said to have constituted an abuse of discretion.

■ The remaining argument is to the effect that the court erred in providing that the allowance should terminate in one year, subject to continuation upon proper application. And, it is urged that under our prior decisions, where the estate is solvent, the allowance must continue until the estate is closed and distribution is made of the widow's share in the estate.

■ In Salter v. Continental Cas. Co., 194 Okl. 26, 146 P.2d 824, essentially this same argument was considered. Our own decisions and cases from other courts are reviewed, indicating general support of four settled principles respecting the orders granting the widow's allowance. One of the established principles is that such an order is final and operates until modified, unless the order expires by its own terms at a date specified. The syllabus states:

"An order for a widow's allowance is a final order that stands until it expires by its own terms, or if not limited, until vacated upon proper proceedings,

unless it is apparent from the administration proceedings that the estate is insolvent at the time the order is made, in which case it is limited to one year by 58 O.S.1941 § 314."

Also see Barry v. Phillips, Admx. (Okl.), 329 P.2d 1046; Martin v. Blasingame (Okl.), 289 P.2d 381; Crane v. Howard et al., 206 Okl. 447, 244 P.2d 559. The rule above announced disposes of the argument advanced relative to termination of the trial court's order.

The order granting the widow's allowance is affirmed in all respects.