139 Nev., Advance Opinion 17

IN THE SUPREME COURT OF THE STATE OF NEVADA

IN THE MATTER OF THE
GUARDIANSHIP OF THE PERSON
AND ESTATE OF KATHLEEN JUNE
JONES, PROTECTED PERSON.

No. 83967

KATHLEEN JUNE JONES,
Appellant,
vs.
ROBYN FRIEDMAN; AND DONNA
SIMMONS,
Respondents.



FILED

JUL 06 20...

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY
CHIEF DEPUTY CLERK

Appeal from a district court order revoking letters of guardianship and appointing a successor guardian. Eighth Judicial District Court, Family Division, Clark County; Linda Marquis, Judge.

*Affirmed.*

Legal Aid Center of Southern Nevada, Inc., and Scott Cardenas and Elizabeth Mikesell, Las Vegas,
for Appellant.

Claggett & Sykes Law Firm and Micah S. Echols and David P. Snyder, Las Vegas; Michaelson Law and John P. Michaelson and Peter R. Pratt, Henderson; Sylvester & Polednak, Ltd., and Jeffrey R. Sylvester, Las Vegas,
for Respondents.

Jennifer M. Richards, Reno,
for Amicus Curiae State of Nevada, Department of Health and Human Services, Aging and Disability Services Division.

BEFORE THE SUPREME COURT, HERNDON, LEE, and PARRAGUIRRE, JJ.

*OPINION*

By the Court, HERNDON, J.:

At issue in this case is the process for removing an adult protected person's guardian and appointing a successor guardian, the protected person's right to manage her relationships with family members, and the protected person's standing to challenge on appeal the district court's determinations of those issues. This matter is governed by several statutes under NRS Chapter 159 that work in concert with NRS 159.328, the Protected Persons' Bill of Rights, to provide appropriate safeguards, including due process protections, for protected persons in guardianship proceedings.

Based on our reading of those statutes, we conclude that a protected person has standing to challenge on appeal both the removal of a guardian and the appointment of a successor guardian. We further conclude that the district court has authority to remove a guardian and appoint a successor guardian, without the filing of a formal, written petition for removal, and that the protected person is entitled to prior notice of and opportunity to be heard on such actions, when possible. Here, the protected person was provided adequate due process. Lastly, although we conclude that the district court erred by improperly shifting the burden to the protected person to file a communication and visitation petition under NRS 159.332-.338, there was insufficient evidentiary support for the protected person's proposed schedule. Therefore, we conclude the district court did not err by denying the protected person's proposed schedule. Accordingly, we affirm.

## FACTS AND PROCEDURAL HISTORY

In 2012, appellant Kathleen June Jones (June) executed estate planning documents naming Kimberly Jones, one of her daughters, as the executor of her will and the chosen guardian of her estate and person, should a guardian later become necessary. In September 2019, amid ongoing disputes within the family, two of June's four other children, respondents Donna Simmons and Robyn Friedman, were vetted pursuant to NRS 159.0613 and appointed as temporary guardians of June after filing a petition alleging that Kimberly, who at that time held only a power of attorney, was unable to address June's needs. Kimberly and June's now-late husband separately opposed the temporary guardian appointments, each filing counter-petitions to be appointed as June's general guardian. Upon further proceedings, respondents decided to support Kimberly's petition, and the district court revoked respondents' letters of temporary guardianship and appointed Kimberly as June's guardian.

In December 2020, respondents filed a petition seeking communication, visitation, and vacation time with June, citing concerns that Kimberly was improperly restricting access to their mother. The district court heard initial arguments on the petition but found that undetermined factual questions existed, noting respondents had made a threshold showing that Kimberly was unwilling to resolve the issues. The district court appointed a guardian ad litem to represent June and ordered the guardian compliance division to review June's care plan and medical records and respondents' requests for communication and visitation. The district court explained that it put this process in place to help it determine whether Kimberly was acting unreasonably as a guardian in light of the statutory requirements.

Meanwhile, the parties filed two other related petitions. Respondents filed a second petition seeking visitation with June specifically related to Mother's Day 2021. In the petition, respondents requested that the district court consider removing Kimberly as guardian if she disobeyed any court-ordered Mother's Day visitation. And June filed a petition requesting that the court approve her proposed visitation schedule, which offered the family an open visitation period for two hours on Friday mornings. The district court set an evidentiary hearing and directed each party to file a pretrial memorandum on legal points and authorities, citing to NRS 159.332 through NRS 159.337 and NRS 159.328.

June petitioned this court for a writ of prohibition or mandamus seeking to vacate the evidentiary hearing; she also moved the district court to stay the evidentiary hearing pending this court's resolution of her writ petition.[1] The district court declined to stay the evidentiary hearing and reminded the parties that it had previously "directed that the[ir] supplemental legal briefs [should] further examine the issues . . . contained in NRS 159.332 through NRS 159.337; and NRS 159.328 (Protected Persons' Bill of Rights)." Notably, the district court also said the following:

> To describe these issues presented as simply a request for visitation orders is misleading. The allegations are that the Guardian has restricted communication, visitation and/or interaction between the Protected Person and two of her daughters in violation of NRS 159.334. If access has been restricted, a relative may ask the court for access to the protected person or to remove the guardian. NRS 159.335.

---

[1]This court denied June's writ petition. *Jones v. Eighth Judicial Dist. Court*, No. 82974, 2021 WL 5992534 (Nev. Dec. 17, 2021) (Order Denying Petition for Writ of Prohibition or Mandamus).

The district court admonished June and Kimberly for failing to comply with its prior order, observing that because they failed to file pretrial memorandums as directed, they "are not anticipated to present any evidence nor additional legal argument." Subsequently, June and Kimberly separately filed late pretrial memorandums.

At the evidentiary hearing, the district court noted that it had read and considered June's and Kimberly's pretrial memorandums. While discussing the scope of the evidentiary hearing, the district court stated that it would determine whether Kimberly had restricted communication, visitation, or interaction and the degree to which June could participate in those decisions. The district court clarified that while it was not determining June's competency, it would consider testimony and evidence on whether she was able to participate, communicate, visit, and interact.[2]

Respondents presented testimony from five witnesses who testified about their difficulties contacting June through Kimberly. Each testified that Kimberly routinely dodged questions, was not trustworthy, and had a boyfriend around whom they felt unsafe and unwelcome. Additionally, they each testified that June did not like talking on the phone and needed help to do so but had expressed to them her desire to visit and spend time with her family. Finally, the witnesses testified that June lacked the capacity to understand the proposed schedules and to control her own communication and visitation with the rest of her family, and they asserted that Kimberly did not help June keep in touch.

At the close of the evidentiary hearing, the district court directed the parties to file written closing arguments. Respondents filed a

---

[2]Despite respondents' request, June did not attend the evidentiary hearing, and she was not ordered to testify.

supplemental pretrial memorandum and a closing argument brief, requesting that the district court issue an order providing family members and/or interested parties with rights to communicate, visit, and enjoy vacation time with June. Respondents further requested that Kimberly be sanctioned for noncompliance. Of note, respondents also suggested that if the district court found that Kimberly did not promote June's best interests, then Kimberly should be removed as guardian.

While they awaited the district court's decision, the parties continued to file documents in the guardianship action. Kimberly filed an accounting and, following corrections directed by the guardian compliance division, a first amended accounting. Respondents objected to Kimberly's accounting filings and again raised the possibility of removing Kimberly as guardian, requesting the district court to "sua sponte remove Kim as Guardian." Kimberly responded and, acknowledging the request for her removal as guardian, argued against removal because she had not intentionally failed to perform any duties, violated June's rights, or restricted visitation as alleged. In reply, respondents yet again urged the district court to remove Kimberly. June offered no response at all to respondents' multiple allegations that would warrant removal of Kimberly as guardian. Kimberly filed a second supplemental accounting. At the accounting hearing, respondents alleged various problems with the accounting, including a failure to provide records and to account for all pending claims and costs, and they cited concerns that Kimberly was over-collecting guardian fees. The district court ordered Kimberly to produce for examination the receipts and vouchers to support the accounting. Kimberly filed a supplement, but the guardian compliance division issued two notices

of accounting review, raising at least five distinct issues with the supplemental accounting.

Nearly a year after respondents filed their first visitation petition, the district court issued an order addressing the various visitation petitions and accounting filings and removing Kimberly as guardian. The court denied June's proposed visitation schedule because June did not testify or file an affidavit or declaration concerning her wishes and no independent witness testified as to June's desire to restrict communication or interaction with her relatives; the court indicated that requests to restrict communications and interactions are properly filed by the guardian. The district court further found that Kimberly had negligently failed to assist June with communication and visitation, creating an isolating environment that made it difficult for family to access June. Additionally, the court determined Kimberly had failed to provide an appropriate annual accounting, which warranted removal under NRS 159.185. The order removed Kimberly as the guardian and appointed Robyn as the successor guardian.

June appealed, challenging the district court's removal of Kimberly and appointment of Robyn as guardian, asserting that her due process rights were violated and that the court failed to properly assess Robyn's suitability and qualifications. She further takes issue with the court's rulings concerning her ability to manage familial relationships. Respondents contest June's arguments, also asserting that she lacks standing to challenge the order in the first place.

## DISCUSSION

As a threshold issue, we first address whether a protected person has standing to challenge the removal of their guardian and appointment of a successor guardian. Second, we consider whether and

when the district court may sua sponte remove a guardian and appoint a qualified successor guardian and the associated due process rights for the protected person. Finally, third, we discuss the protected person's right to decide their own visitation and communication schedule.

*A protected person has standing to challenge the process of removal and appointment of guardians*

Respondents argue that June lacks standing to challenge the district court's removal of Kimberly as her guardian and appointment of Robyn as her successor guardian. Respondents contend that only Kimberly, as the former guardian, has standing to challenge the district court's order. June responds that, as the protected person, her autonomy is at stake, and the harm she faces is distinct from the guardian's harm. June further argues that she is aggrieved because the district court ignored her right to participate in the plan for her care, as guaranteed under the Protected Persons' Bill of Rights, NRS 159.328(1)(f), and disregarded her previously stated wishes.

"Standing is a question of law reviewed de novo." *Arguello v. Sunset Station, Inc.*, 127 Nev. 365, 368, 252 P.3d 206, 208 (2011). NRAP 3A(a) provides that "[a] party who is aggrieved by an appealable judgment or order may appeal from that judgment or order." "[A] party is aggrieved . . . when either a personal right or right of property is adversely and substantially affected." *In re Estate of Hughes v. First Nat'l Bank of Nev.*, 96 Nev. 178, 180, 605 P.2d 1149, 1150 (1980).

The Protected Persons' Bill of Rights provides that a protected person has the right to "[h]ave due consideration given to his or her current and previously stated personal desires." NRS 159.328(1)(g); *see also* NRS 159.328(1)(f) (noting a protected person's right to participate in a plan for their care). Additionally, several statutes recognize a protected person's

interest in selecting a guardian. *See, e.g.*, NRS 159.044(1) (protected person may petition for appointment of a guardian); NRS 159.0613 (setting forth preferences in selecting a guardian and giving precedence to the protected person's choice); NRS 159.1853(1)(a) (protected person may petition for removal of a guardian).

Because the challenged order overrode June's choice of guardian, her autonomy interests and personal right to have her desires duly considered were adversely and substantially affected by the court's order. Thus, we conclude that June, as the protected person in the guardianship, has standing to challenge the order separate from Kimberly's standing as the guardian. *Cf.* NRCP 17(a)(1)(C) (conferring on a guardian the right to bring an action on behalf of a protected person).

*The district court did not improperly remove Kimberly as guardian and appoint Robyn as successor guardian*

*The district court has authority to remove a guardian pursuant to NRS 159.185 without a written petition having been filed*

June argues that, under the circumstances here, the district court lacked authority to remove Kimberly as guardian and appoint Robyn as successor guardian. In particular, June points out that no petition for removal was filed and asserts that, even if the circumstances permitted the district court to act sua sponte, it erred in so doing without providing her appropriate notice and without following the statutory emergency removal and appointment procedures.

NRS Chapter 159 contains several provisions concerning removing a guardian. NRS 159.185(1) governs the conditions for removal and provides that "[t]he court may remove a guardian if the court determines that" certain events have occurred, including when the guardian has mismanaged the protected person's estate, failed to perform

SUPREME COURT
OF
NEVADA

duties required by statute or court order, or violated any provision of NRS 159.331-.338, or when the appointment of a new guardian is in the protected person's best interests. NRS 159.1853 discusses who may petition for removal and outlines the required contents of a petition to remove a guardian. And NRS 159.1855 requires the district court to serve a citation on the guardian and all other interested persons if such a petition is filed.

While these statutes contemplate the filing of a petition for removal, this court has previously recognized that the district court, in the interest of the protected person, has the authority to sua sponte remove a guardian. *See Deegan v. Deegan*, 22 Nev. 185, 197, 37 P. 360, 361 (1894).[3] Other states agree that inherent in the district court's jurisdiction over the guardianship is the power to appoint and remove guardians. *See, e.g., In re Ford*, 137 S.W. 32, 36 (Mo. Ct. App. 1911) (holding that it is the court's duty "to control and safeguard the estates of minors under their charge" and no removal petition is required for the court to exercise its duty); *In re Guardianship of Spangler*, 933 N.E.2d 1067, 1075 (Ohio 2010) (holding that a probate court has plenary power to investigate whether a guardian should be removed); *In re Guardianship of Chambers*, 148 P. 148, 149 (Okla. 1915) (holding that "the county court has the inherent power to remove guardians for cause," as well as statutory removal power for specified causes upon notice). Thus, separate from an individual formally petitioning the court, the district court has its own ability to remove a guardian if it determines

---

[3]In *Deegan*, this court held that a guardian statute provided the court with sua sponte authority to remove a guardian, without notice, after the district court asked for corrected accounting, but none was provided. 22 Nev. at 197, 37 P. at 361 (citing *Deck's Estate v. Gherke*, 6 Cal. 666, 668 (1856) (recognizing similar authority for probate courts in California)).

that one or more of the conditions set forth in NRS 159.185 have been satisfied.

*The district court did not deprive June of her procedural due process rights*

June raises several due process arguments on appeal, including that the district court deprived her of her due process rights by failing to notify her that it was considering removing Kimberly and appointing Robyn as her successor guardian. Respondents urge that this court should not address these arguments because June raised them for the first time on appeal.

Generally, "[a] point not urged in the trial court, unless it goes to the jurisdiction of that court, is deemed to have been waived and will not be considered on appeal." *Old Aztec Mine, Inc. v. Brown*, 97 Nev. 49, 52, 623 P.2d 981, 983 (1981). While this court has "on occasion declined to review constitutional issues not raised below," *Desert Chrysler-Plymouth, Inc. v. Chrysler Corp.*, 95 Nev. 640, 643, 600 P.2d 1189, 1190 (1979), "this court can consider constitutional issues for the first time on appeal" when appropriate, *Tam v. Eighth Judicial Dist. Court*, 131 Nev. 792, 798, 358 P.3d 234, 239 (2015). *See also Staton v. Mayes*, 552 F.2d 908, 915 (10th Cir. 1977) (holding that although the plaintiff failed to raise denial of due process at the trial court level with respect to a school board's failure to make findings, the issue was "of importance in further proceedings and it has due process implications justifying [the court's] consideration on the merits").

June's procedural due process claims raise important issues of law regarding whether, in the absence of a petition for removal being filed, she received appropriate notice that the issues of the removal of her guardian and appointment of a successor guardian were before the district

SUPREME COURT
OF
NEVADA

(O) 1947A

11

court for consideration. The notice required when a district court, absent the filing of a formal petition, removes a guardian and appoints a successor guardian is an important issue in guardianship proceedings, as either action may deprive a protected person of their autonomy and impinge on the protected person's rights. *See generally Baker v. Baker*, 59 Nev. 163, 172, 87 P.2d 800, 803 (discussing the purpose of guardianship appointment is to protect the child or disabled adult), *modified on reh'g on separate grounds by Baker v. Baker*, 59 Nev. 163, 96 P.2d 200 (1939). Thus, while it is troubling that June failed to raise procedural due process issues at the district court level, this court will consider these arguments.

*The district court did not deprive June of procedural due process when it removed Kimberly as her guardian*

June argues that the district court denied her due process because it did not provide her with notice that her guardian could be removed as a result of the hearings and a successor guardian appointed. June contends that by failing to provide her with notice, the district court violated the Protected Persons' Bill of Rights, as well as NRS 159.1855(1), which requires the district court to issue a citation to the guardian and all other interested persons when a petition for removal is filed. *See* NRS 159.328(1)(b) (providing that a protected person has the right to "[r]eceive notice of all guardianship proceedings").

The parties agree that the protected person is entitled to procedural due process protections. *See Lassiter v. Dep't of Soc. Servs. of Durham Cty. N.C.*, 452 U.S. 18, 27 (1981) (listing considerations for "deciding what due process requires" where an individual's liberty interests are at stake) (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)). Because both actions implicate the protected person's liberty interests, the protected person must be provided with notice and a meaningful



opportunity to be heard. *See Mathews*, 424 U.S. at 349; *Callie v. Bowling*, 123 Nev. 181, 183, 160 P.3d 878, 879 (2007).

> *A protected person is entitled to notice of all guardianship proceedings*

The Due Process Clause provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1; *see also* Nev. Const. art. 1, § 8(2); *Eggleston v. Stuart*, 137 Nev. 506, 511, 495 P.3d 482, 489 (2021). The plain language of the Protected Persons' Bill of Rights also provides that each protected person has the right to "[r]eceive notice of *all* guardianship proceedings and all proceedings relating to a determination of capacity unless the court determines that the protected person lacks the capacity to comprehend such notice." NRS 159.328(1)(b) (emphasis added). While the statute makes clear that the protected person must receive notice of all guardianship proceedings, this court has not yet considered what can constitute sufficient notice when a formal petition to remove a guardian has not been filed. *See Callie*, 123 Nev. at 183, 160 P.3d at 879 (recognizing that procedural due process "requires notice and an opportunity to be heard"). Here, because the district court did not determine that June lacked the capacity to comprehend the proceedings, the parties and court were required to ensure that June was provided sufficient notice that the district court was considering removing the guardian and appointing a successor.

We conclude that this requirement was met as to removal. Here, there were multiple instances where allegations warranting the removal of Kimberly as guardian were raised to the court such that a reasonable person would have been on notice that the issue had been placed before the district court. The cumulative effect of these multiple references, coupled with the district court's own statements, leaves little doubt that

June had notice that the removal of Kimberly as guardian was open for consideration by the court. The district court ordered the parties to file a pretrial memorandum "focusing on legal points and authorities" and cited to "NRS 159.332 through NRS 159.337; and NRS 159.328" as statutes it was considering for the evidentiary hearing. Importantly, NRS 159.335(2) warns that a guardian who improperly restricts communications and access to the protected person "is subject to removal." Additionally, the district court's order denying June's request to stay the evidentiary hearing pointedly noted that the issues did not simply involve visitation orders but rather respondent's "allegations are that the Guardian has restricted communication, visitation and/or interaction" with the protected person's other family members, and that "[i]f access has been restricted, a relative may ask the court for access to the protected person or to remove the guardian" and cited to NRS 159.335.[4] This statement is a clear indication that the allegations regarding Kimberly's conduct as guardian were of great concern to the court and could justify a request to remove her if proven. Rather than addressing respondents' allegations about Kimberly's failures as her guardian or respondents' request in their second petition that the court consider removing Kimberly if she continued to violate court-ordered visitation or the removal process under NRS 159.335, June's pretrial memorandum largely ignored Kimberly's alleged failures and instead focused only on urging the district court to approve her proposed visitation schedule.

---

[4]NRS 159.335 allows "any person . . . [who] reasonably believes that a guardian has committed an abuse of discretion" by restricting access to the protected person "may petition the court to . . . [r]emove the guardian pursuant to NRS 159.185." NRS 159.335(1)(b), (d).

June also received notice through respondents' multiple requests for the district court to "sua sponte remove Kim as Guardian" in their objection to Kimberly's accounting filings. And in reviewing those filings, the district court observed that Kimberly was not fulfilling her statutory duties as guardian relative to her accounting filings. *See* NRS 159.185(1)(e), (f) (providing that the district court may remove a guardian who fails to perform their statutory duties). Indeed, the district court noted that Kimberly failed to provide appropriate accountings and pointed out the discrepancies, including her failure to include supporting worksheets and balance inconsistences, observing that the guardian compliance division continued to find errors that could not be accounted for despite several correction opportunities. *See generally* NRS 159.176-.184 (concerning a guardian's accounting requirements). It should be noted as well that Kimberly clearly recognized the various allegations respondents raised that would warrant her removal as guardian. Not only did Kimberly oppose respondents' accounting objection, she also argued against the allegations and opposed her removal. In response, respondents again urged the district court to review the allegations against Kimberly and consider removal. In contrast, June never responded to respondents' opposition to Kimberly's accounting or the allegations concerning Kimberly's improper conduct as the guardian or respondent's request for the court to remove Kimberly as guardian.

Respondents also urged the district court to remove Kimberly as the guardian on numerous other occasions, including in respondents' Mother's Day visitation petition, during the evidentiary hearing, and in their written closing arguments. Each of these filings and the evidentiary hearing provided June with additional notice and a meaningful opportunity

to be heard on the issue of removing Kimberly as guardian.[5]  *Callie*, 123 Nev. at 183, 160 P.3d at 879.  Clearly, although respondents did not file a formal, written petition for removal, respondents requested, at various times and in various ways, both orally and in writing, that the court should consider removing Kimberly as guardian.  Moreover, all other participants below—respondents, Kimberly, and the district court—recognized and addressed the issue of whether Kimberly should be removed as guardian. Thus, we conclude that June received sufficient notice that Kimberly could be removed as guardian as a result of the allegations before the district court for decision.  And because these numerous filings also provided June with an opportunity to be heard on the subject, we further conclude that the district court did not deprive June of her procedural due process rights.

*The district court did not deprive June of her procedural due process rights when it appointed Robyn as her successor guardian*

June contends that the district court deprived her of procedural due process when, after removing Kimberly as her guardian, it sua sponte appointed Robyn as her successor guardian.  In addition to arguing that she was entitled to notice under the Protected Persons' Bill of Rights, June also argues that the district court did not abide by NRS 159.187(2)'s requirement to serve the protected person with a petition to appoint a successor guardian.  Respondents disagree and contend that, under NRS 159.1871, the district court had authority to make an emergency appointment of a successor guardian without providing the notice required by NRS 159.187(2).

---

[5]Although Kimberly opposed respondents' removal requests at least once, June did not.

*Notice of removing a guardian is intertwined with notice of appointing a successor guardian*

Both NRS 159.187 and NRS 159.1871 govern the appointment of successor guardians. NRS 159.187 provides the following:

> 1. When a guardian dies or is removed by order of the court, the court, upon the court's own motion or upon a petition filed by any interested person, may appoint another guardian in the same manner and subject to the same requirements as are provided by law for an original appointment of a guardian.

> 2. If a guardian of the person is appointed for a protected person pursuant to this section, the protected person must be served with the petition. If the protected person does not object to the appointment, the protected person is not required to attend the hearing.

NRS 159.1871 provides an alternative method of appointment either immediately or upon the occurrence of a designated event:

> 1. The court at any time may appoint a successor guardian to serve immediately or when a designated event occurs.

> 2. A person entitled under NRS 159.044 to petition the court to appoint a guardian may petition the court to appoint a successor guardian.

> 3. A successor guardian appointed to serve when a designated event occurs may act as guardian when:

> (a) The event occurs; and

> (b) The successor has taken the official oath and filed a bond as provided in this chapter, and letters of guardianship have been issued.

> 4. A successor guardian has the predecessor's powers unless otherwise provided by the court.

> 5. The revocation of letters of guardianship by the court or any other court action to suspend the authority of a guardian may be considered to be a designated event for the purposes of this section if the revocation or suspension of authority is based on the guardian's noncompliance with his or her duties and responsibilities as provided by law.

Both statutes authorize the district court to appoint a successor guardian when the original guardian needs to be replaced. NRS 159.187 focuses on the need for replacement occasioned by the death of the original guardian or the removal of the original guardian by court order, whereas NRS 159.1871 focuses on the appointment of a successor guardian to take over immediately or upon the occurrence of a designated event, including removal. While June argues that she was entitled to be served with a petition, this argument fails to appreciate that the removal of Kimberly as guardian and appointment of Robyn as successor guardian was not occasioned by the filing of a petition and therefore NRS 159.187(2)'s petition notice requirements do not apply. Here, the removal occurred by order of the court as contemplated under NRS 159.187(1).

Moreover, because the district court removed Kimberly as guardian due to her "noncompliance with . . . her duties and responsibilities[,]" NRS 159.1871(5), the court was empowered under NRS 159.1871(1) to appoint a successor guardian immediately. Thus, for purposes of NRS 159.1871, because the act of removing a guardian is intertwined with appointing a successor guardian, the notice is the same, i.e., sufficient notice of removal also constitutes adequate notice of appointment of a successor guardian.

Because we conclude that June had sufficient notice that the district court was considering removing Kimberly as her guardian, we also conclude that June received adequate notice that the district court could

potentially appoint a successor guardian if removal of the current guardian became necessary. Furthermore, because June was on notice that the district court was considering removing Kimberly as her guardian, she also had numerous opportunities to be heard on the matter of who the district court should appoint as a successor guardian. Indeed, if the district court removed June's guardian without immediately appointing a successor guardian, June would have been left without a guardian. Thus, we conclude that the district court did not deprive June of her procedural due process rights when it appointed Robyn as June's successor guardian pursuant to NRS 159.1871.

*The district court's decision to remove Kimberly as guardian and appoint Robyn as successor guardian is supported by substantial evidence*

Having concluded that the district court did not deprive June of her right to procedural due process in removing Kimberly as guardian and appointing Robyn as June's successor guardian, we now consider whether the district court abused its discretion in doing so. This court reviews a district court's guardianship determinations for an abuse of discretion. *In re Guardianship of L.S. & H.S.*, 120 Nev. 157, 163, 87 P.3d 521, 525 (2004). Although June does not dispute any of the alarming issues raised by respondents or the district court, "we must 'be satisfied that the district court's decision was based upon appropriate reasons.'" *Id.* (quoting *In re Guardianship & Estate of D.R.G.*, 119 Nev. 32, 37, 62 P.3d 1127, 1130 (2003) (internal quotation marks omitted)). We give deference to the district court's findings of fact, and we will not set them aside unless clearly erroneous or not supported by substantial evidence. *Ogawa v. Ogawa*, 125 Nev. 660, 668, 221 P.3d 699, 704 (2009). "[C]onclusions of law are reviewed de novo." *Dewey v. Redevelopment Agency of Reno*, 119 Nev. 87, 93, 64 P.3d 1070, 1075 (2003).

*The district court did not abuse its discretion in removing Kimberly as guardian*

NRS 159.185(1) provides, in pertinent part, that the court may remove a guardian where it determines

> (d) The guardian of the estate has mismanaged the estate of the protected person;
> (e) The guardian has negligently failed to perform any duty as provided by law or by any order of the court and:
>> (1) The negligence resulted in injury to the protected person or the estate of the protected person; or
>> (2) There was a substantial likelihood that the negligence would result in injury to the protected person or the estate of the protected person;
>
> . . .
>
>> (i) The guardian has violated any provision of NRS 159.331 to 159.338, inclusive, or a court order issued pursuant to NRS 159.333; [or]
>> (j) The best interests of the protected person will be served by the appointment of another person as guardian.

Here, the record contains ample evidence that removing Kimberly was in June's best interest. The district court heard testimony that Kimberly was restricting communication and visitation between June and her family members.[6] June could not operate a phone, and Kimberly did not help her to operate it, resulting in June not communicating with her family. Thus, we agree with the district court that Kimberly violated her statutory duty to "not restrict the right of a protected person to

---

[6]Although NRS 159.333(1) authorizes a guardian to petition the district court for an order restricting communication and visitation with the protected person, Kimberly did not seek such an order here.

communicate, visit or interact with a relative or person of natural affection." NRS 159.332(1). There is also substantial evidence of failed accounting, including that Kimberly failed to account for the funds withdrawn and the guardian compliance division's various notices of accounting review raising multiple issues with the supplemental accounting. Because a guardian has significant accounting reporting requirements as a part of their statutory duties, *see generally* NRS 159.176-.181 (requiring a guardian to provide an annual accounting concerning the protected person's assets and property), we further agree with the district court that Kimberly's accounting discrepancies evinced a failure of her statutory accounting duties. Because the district court noted concerns that Kimberly had mismanaged June's estate and had failed to perform her statutory duties as set forth above, the district court did not abuse its discretion in concluding that removing Kimberly as guardian was in June's best interest.

*The district court did not abuse its discretion in appointing Robyn as successor guardian*

We also conclude that the district court did not abuse its discretion in appointing Robyn as the successor guardian. As set forth above, the record supports the district court's decision to remove Kimberly as guardian. And by removing Kimberly, the district court created a vacancy for a successor guardian. NRS 159.187 allows the district court to appoint a successor guardian when a current guardian is removed by order of the court. NRS 159.1871(5) permits the district court to immediately appoint a successor guardian where the district court revoked letters of guardianship "based on the guardian's noncompliance with his or her duties and responsibilities as provided by law." Here, because the district court removed Kimberly as guardian due to her failure to comply with her statutory duties as guardian, the district court's order fully satisfies the

conditions required by NRS 159.1871, and it was required to appoint a successor guardian.

> *Because Robyn was previously vetted by the district court, she did not need to go through the approval process again before being appointed as successor guardian*

June argues that the district court improperly appointed Robyn as successor guardian because there is no showing that Robyn should be the successor guardian and because the district court did not abide by the procedures required to appoint a guardian. Specifically, June states that NRS 159.187 requires the district court to go through the appointment procedures set forth in NRS 159.0613. Respondents argue that Robyn was already vetted as a temporary guardian under NRS 159.0613 and did not need to go through the whole process again since the district court was relying on NRS 159.1871 in appointing her.

Neither NRS 159.187 nor NRS 159.1871 require the district court to repeat the vetting process when appointing a successor guardian who was previously vetted and served as guardian. The parties do not dispute that Robyn had previously been vetted as a guardian pursuant to NRS 159.0613 when the district court appointed her as June's temporary guardian before ultimately appointing Kimberly as guardian.[7] *See* NRS 159.0613 (listing the qualifications to serve as guardian of a protected person). Because Robyn had already been vetted by the district court to serve as June's temporary guardian, we conclude that the district court

---

[7]While we conclude that the district court was not required in this instance to follow NRS 159.0613's vetting process when it reappointed Robyn as guardian in this case, this does not mean that the district court can appoint a person to serve as guardian or successor guardian without first conducting that vetting process.

satisfied NRS 159.0613's vetting requirements when it immediately appointed Robyn to serve as June's successor guardian without undergoing a separate analysis. While there could be factors evident in a specific case that would warrant the re-vetting of a previously approved guardian, here there are no allegations of any changed circumstances that would have necessitated the district court engaging in such a re-vetting of Robyn. Indeed, requiring the district court, in all cases, to automatically re-vet a previously vetted and appointed guardian would frustrate the purpose of NRS 159.1871, which allows the district court to *immediately* appoint a successor guardian. Moreover, it would waste judicial resources and leave the protected person without a guardian where immediacy is needed. Thus, we conclude that the district court did not abuse its discretion when it appointed Robyn as June's successor guardian.

*A protected person does not need to file a petition under NRS 159.332 and NRS 159.333, but the district court properly denied June's proposed visitation schedule*

Finally, June argues the district court misinterpreted NRS 159.332-.338 by improperly shifting the burden by requiring her to file a petition to restrict her communications, noting that such action limits a protected person's ability to manage their own personal relationships. Respondents argue that June does not have the cognitive ability to direct her own communication and visits, and they suggest that it was June's counsel, and not June, who proposed the visitation and communication schedule. June responds that there is no evidence in the record that she is unable to express her preferences and notes that the district court never made such a finding.

The district court's decision may be affirmed on any ground supported by the record, even if not relied upon by the district court. *See*

Supreme Court
of
Nevada

*Saavedra-Sandoval v. Wal-Mart Stores, Inc.*, 126 Nev. 592, 598-99, 245 P.3d 1198, 1202 (2010). Thus, the decision may be affirmed "if the district court reached the correct result, even if for the wrong reason." *Id.* at 599, 245 P.3d at 1202.

The parties do not dispute that the plain language of NRS 159.332-.333 explicitly provides that only a guardian needs to petition for an order allowing them to restrict the protected person's communication, visitation, and interactions. By requiring June to file a separate petition seeking court approval of the visitation schedule, the district court improperly shifted the burden onto the protected person where none existed. A protected person should not be required to file a petition under NRS 159.333 to restrict their own communication, visitation, and personal relationships.

However, the district court's raised concerns illustrate that there was insufficient evidence June wished to restrict her communication, visitation, and interactions. The court recognized that June has her own authority, without a court order, to manage her own relationships. June was not barred from creating a proposed schedule; however, June did not present sufficient evidence that she wanted to restrict access and that this was her own proposal. Therefore, while June is correct that the district court should not have required her to file a petition to restrict communications and visitation, we nonetheless conclude that the district court properly rejected her proposed schedule.

## CONCLUSION

June, as the protected person, has standing to bring this appeal challenging the removal of her guardian and appointment of a successor guardian. We conclude that the district court did not violate June's due process rights by removing Kimberly and appointing Robyn because there

was sufficient notice and a meaningful opportunity for June to be heard on those matters. Moreover, there was substantial evidence to support removing Kimberly and appointing Robyn. We further conclude that when appointing a successor guardian, the district court does not need to make suitability findings for a previously vetted and approved guardian. Lastly, we conclude that the district court erred by improperly shifting the burden to June and requiring her to file a petition under NRS 159.333 to control her own interactions with others. However, because June's visitation schedule request lacked sufficient evidentiary support, we conclude that the district court appropriately denied her petition. Accordingly, because we conclude that the district court properly removed Kimberly as the guardian, appointed Robyn as the successor guardian, and denied June's proposed visitation schedule, we affirm the district court order revoking letters of guardianship and granting letters of guardianship.

, J.
Herndon

We concur:

, J.
Lee

, J.
Parraguirre

